WESTERN DIST.
*October,* 1840.

MILLER
*vs.*
HOLSTEIN.

---

### MILLER *vs.* HOLSTEIN.

#### ON A RE-HEARING.

| 16 | 395 |
|---|---|
| 109 | 703 |

The courts in Louisiana, are not bound by the technical and artificial rules of the common law of slander, but where our law is silent, we may resort to a foreign system for a rule consonant to reason and equity.

But the court is not prepared to adopt the common law distinction, between words actionable in themselves and words which are not so ; and to say a plaintiff is not entitled to recover in an action of slander, unless charged with an indictable offence, without proof of special damages.

*Garland, J.* Actions of slander may be maintained, without proving damages, and the party may recover.

Every act of man which causes damage to another, creates responsibility, and when that responsibility is not defined, we must proceed under *article* 21 of the *Louisiana Code*, and resort to natural law, reason and usage.

*Martin, J., dissenting.* In actions of slander, there are words which are actionable in themselves, and damages will be given, although none are proved; but there are others not actionable, and no damages will be given unless some are proved.

The judgment should be reversed, and the case remanded, with directions to the judge, not to instruct the jury, that "charging the plaintiff falsely and maliciously, with moral turpitude, so as to injure his character and standing in society, they should find damages for *him*, without any special damage being proved.

The opinion in this case, was first pronounced at the close of the October term, 1839, and the judgment had not become final, at the adjournment of the court. The court then consisted of but three judges, and the presiding judge dissented, and was dissatisfied with the decision. On the return of the judges from the Western District, judge Strawbridge resigned, who had made the opinion of the court. The court was about to be remodeled, or made to consist of five judges, and three new ones were to be appointed. Under these circumstances and from the great importance of the principles involved in the case, the propriety of a re-hearing and re-argument was suggested. Mr. Strawbridge, after his retirement from the bench drew up the following synopsis of the law of slander, as understood in this state, and upon which, a re-hearing was allowed by the five judges at the the October term, 1840.

*Strawbridge, as amicus curiæ,* submitted the following brief of argument to the judges.

The argument of the defendant, after referring to *articles* 1928 and 2294, of the *Civil Code,* as the basis of the plaintiff's claim, proceeds to say, that the latter *article* is only declaratory of a principle existing in the common law :

" That whenever an article of our Code is copied literally from the *Napoleon Code*, we are in the habit of adopting the construction of the Court of Cassation," and from thence infer that we might fairly refer to the decisions of the English courts, in applying a similar principle."

This inference was unnecessary, inasmuch as the *article* 2294 of our Code is identical with *article* 1382, of the *Napoleon Code*, so that if we are to look abroad for light, according to his own argument, it would have been to the jurisprudence of France. This was in part done, so far as the limited means at hand allowed; little it is true was found, but certainly that little did not countenance any thing like the charge required from the court by the defendant. Admitting, however, the reasoning to be sound in its application, it evades the question by leaving out of view *article* 1928, which formed the main support of plaintiff's claim. If the principles therein declared, were shown to form a part of the common law, the case would be widely different; but whilst that permits damages not specially proved to be given, where the libel charged an offence indictable, &c., and denies them unless specially proved in cases not charging an offence indictable, &c., the textual provision of *article* 1928, provides, " that where the injury done affects some intellectual enjoyment, &c., damages in the discretion of the judge may be given. "Damages not appreciable in money;" in other words, " damages not specially proved." The common law confines these to libels not charging an indictable offence, &c. Our law extends them to all cases "of intellectual enjoyment, in matters of taste, morality or religion," or to "matters of convenience, or other legal gratification."

As a matter of taste, most men would prefer that some tattling neighbor, should quietly say, " John swore falsely" in his testimony given in the suit of A. *vs.* B., than that another should publish in the Gazette, that "John had perjured himself, and that he had the documents to prove it," and yet, whilst the first of these would be actionable, the latter would not be a construction at war with the terms of *article* 1928.

The defence is further pressed on other grounds, viz: that even leaving out of view the common law authorities, the former decisions of our own courts support the charge required. Should this be found to be *so*, it would indeed be matter of serious import. But a careful examination of the cases cited, will show that with the exception of one case, (Wamack *vs.* Kemp,) not only has no such question been decided, but that it has never been discussed. That question emphatically is, can a person falsely and maliciously charged with purjury, not committed in a legal proceeding, recover damages "not appreciable in money, or damages not special ?"

One of these cases, Cauchoix *vs.* Dupuy, gave damages for calling the plaintiff a colored man, words not actionable in themselves by any English or American authority referred to, though under our construction of *article 1928*, that judgment was correct; this is supported by analogy to those common law decisions, which make actionable the charge of some contagious disease, which would have the effect of excluding a man from society. Yet, though, the moral disease of purjury might produce the same effect, the charge of it is not actionable.

Take another case, a man is called an abolitionist; if the words were uttered in London, they would be complimentary instead of libelous, yet here they would as certainly exclude him from society as calling him a colored man; yet, where is the common law authority for sustaining an action on them without special damage. Words then may be actionable in one place, or under certain circumstances, when in another place or in other circumstances, they would not. If we were about to make a rule instead of interpreting one, the sensible rule would be that which refers to the state of society we are in. What there tends to bring a man into the contempt and disrespect of his neighbors, deprives him of the enjoyment of good society, and wounds his feelings and destroys his happiness, is a wrong; and any Code professing the rule, that every wrong has a remedy, should furnish that remedy. A young lady may be called a whore;

that is not actionable out of London, but she may show spe-
cial damage, viz: that she lost a chance of marriage.　But
as was said in Stewart *vs.* Carlin, "a professional man may
not be able to administer positive or direct evidence of his
injury," and therefore, the words were held actionable.
Much more difficult would it be for the female, to furnish
positive or direct testimony of her injury, or to value it in
dollars and cents.　Yet, by common law rule, we must hold
these words not actionable, though every intellectual enjoy-
ment may be destroyed for life.

The case of Wamack *vs.* Kemp does furnish a precedent;
had it appeared that *article* 1928, of the Code, then recently
adopted, was under consideration, it would carry greater
weight if it was not; the case was not fully discussed; the
important legislative enactment now referred to, was not
under consideration, in consequence, one precedent, if it can
be so called, has been made.　But would the decision have
been the same had the attention of the court been drawn to
the article in question?　The author of these remarks, is
opposed to change in law matters, but he cannot think that
one unadvised declaration of a principle ought to controvert
the plain letter of a positive law ; he would however, under
the circumstances, be pleased that a re-hearing should be
granted.

*Dunbar* and *Hyams*, for the plaintiff, contended, that this
case should be decided according to the practice and princi-
ples of the law of slander, as understood and practised in the
United States, and not adopt the arbitrary rules of the Eng-
lish law.　But it was proper to remark, that the charge of
the judge *a quo*, to the jury, so much deprecated by the
defendant's counsel, is even in conformity to the law of
libel as understood in England, in this, that the words
spoken are to be taken in their popular sense ; and if the
words used by the defendant, of and concerning the plaintiff,
might in their most offensive sense have been construed or
understood to import a charge of perjury in its legal signifi-
cation, the judge was right in refusing a new trial.

2. But, admitting that there was doubt whether the action could be maintained for the words alleged in the petition, without showing special damage under the law of libel, as understood in England, yet, under the provisions of the *Louisiana Code*, articles 21, and 2294–95; and the expositions which had been given by the Supreme Court, to those articles in the cases of Stewart *vs.* Carlin, 2 *Louisiana Reports*, 72; and Trimble *vs.* Moore, *Idem.*, 577; and also another case, 3 *Idem.*, 206, of Cauchoix *vs.* Dupuy, there could be no question of the right of the plaintiff, to sustain his action under the laws of Louisiana.

3. In the case of Stewart *vs.* Carlin, it had been expressly said, that the action of slander could be maintained under the articles above mentioned of our own Codé, without a resort to the laws of other countries; and that it was not necessary to prove special damages, as when a professional man should be accused of being ignorant of the first principles of his profession, &c. That it might be impossible to show special damage in such a case. It cannot be fairly inferred from the fact of the example given above, being in conformity to one of the rules of the English law, that at the time the court declared that we were to be governed by our own law on this subject, it was intended that this elucidation, by way of an example, should hold us to the strict rules of the English law of libel : on the contrary from this decision, and all subsequent ones of this court, on this subject, it is probable that it has been the object of the court to establish this action upon the provisions of our code, untrammeled by the rules of the English law ; which in many respects would be opposite to the principles of our jurisprudence, unsuitable to the circumstances of the country, and in opposition to the equal rights of every citizen, as exercised under our state and federal constitution.

4. The principle of the English law of libel, that to make words actionable without showing special damage they must amount to an accusation of a criminal offence, is founded not upon the damage which *has been sustained*, but upon the damage which *might have been sustained*, if the party of

whom the words were spoken, had been prosecuted criminally. On the contrary, our law gives redress for damages sustained, or what it may be fairly presumed have been sustained. "Every act whatever of man, that causes damage to another, obliges him by whose fault it happened to repair it." *Louisiana Code, article* 2294.

5. The English law of libel would be unsuitable to the circumstances and condition of the country. When actions of this kind became too frequent in England, the judges had to depart from the liberal and equitable rules by which they were first governed, in their decisions in cases of slander, and, instead of them established principles arbitrary, restrictive and unreasonable. For all this, however, there was some apology in England. The great number of offences made criminal in that country, still left a good deal of room for this action, and a plausible excuse given by the judges for not affording redress, in many cases of great outrage, was that the canonical or ecclesiastical courts would give relief. In Louisiana, we have cause to congratulate ourselves that we have neither the multitude of penal laws, nor the ecclesiastical courts. That from the character of our people no danger was to be apprehended of such actions becoming too frequent; and it was more to be feared, that instead of seeking redress in a court, they would take the law into their own hands, and attempt to wipe out with the blood of the slanderer the stain upon the reputation of themselves or their families.

6. That it was to be hoped, at least, this court would not adopt, of its own accord, the English law of libel, when it was so palpable that its rules and principles were unsuitable to the circumstances and condition of our country.

7. The distinctions made by the English law, as to the persons who could maintain this action, and for what words uttered against them, is contrary to the equal rights of our citizens, as secured to them by our fundamental laws. What reason was there, that a lawyer, when accused of not knowing the first principles of his profession, should be entitled to his action; and a poor man, like the plaintiff, earning

WESTERN DIST.
October, 1840.
───────
MILLER
vs.
HOLSTEIN.

his bread by the sweat of his brow, should be without redress, when charged with swearing falsely? Rather let this action be maintained according to the idea of the great jurist Toullier, (so eloquently expressed by him) upon the principles of honor and sublime morals. Do unto others as you would others should do unto you : See *Toullier, vol.* 11, *No.* 121. 1 *Idem., No.* 210 ; *Penal Code, No.* 367.

8. In conclusion, that nothing was to be apprehended from leaving such cases to the discretion of a jury, guided and controlled by the power of the court to grant a new trial whenever it appeared that damages were given disproportioned to the offence, or when indeed no grave offence had been committed.

*Purvis,* for the defendant, argued to show that the judge who tried this case in the first instance, erred in refusing to charge the jury as requested, and also in giving the charge which was addressed to them. According to the best writers and highest authorities on the law of libel and slander, the words charged in the petition are not actionable of themselves, and no special damage is shown. Without actual damage having been proved, the jury should not have found a verdict for the plaintiff. 2 *Chitty's Blackstone,* 92, and notes. *Starkie on Libel,* 46. 5 *Johnson's Reports,* 187.

2. Public policy requires that some limit should be fixed to actions of this character, and the principles which have guided the English courts in their decisions upon this subject, "that an action lies for any words which import the charge of a crime, for which a party may be indicted," or if the charge be not indictable, then "special damages must be shown," appear to fix a just and proper limit, avoiding the extreme on the one hand of encouraging frivolous and vexatious suits, and on the other, shutting the door of justice to real injuries and well grounded complaints.

3. That the principles upon which the decisions of the Supreme Court of our state are based, upon the subject of slander, are by no means incompatible with the common law doctrine prevalent in England, and the common law

states. See, Stewart *vs.* Carlin, 2 *Louisiana Reports.* There
a charge of perjury (an indictable offence) was preferred
against the party plaintiff. In the case of Cauchoix *vs.* Du-
puy, 3 *Louisiana Reports,* the charge being a man of color,
would affect plaintiff's rights of inheritance under our
law. See also, 2 *Blackstone*, 98, *Slander of Title.* That
the evidence of malice was wholly insufficient to justify
the verdict.

*Brent,* on the same side, argued in support of the common
law principles, as furnishing the best rules to govern in
actions of slander. The rule was the best, that words
importing the charge of a criminal offence for which the par-
ty might be indicted or punished criminally, or which caused
injury to one's trade or profession and such like, are actiona-
ble in themselves, and that in all other cases, special dama-
ges should be proved before any recovery can be had.

2. Words of scandal or tending to bring a person into con-
tempt, or wound his feelings, are not actionable *per se.* See
*Starkie on Libel and Slander.*

3. In the present case, the words spoken do not charge
the party with committing perjury, for which he might be
indicted, as that offence can only be committed in a judicial
proceeding. It is not every false swearing that amounts to
perjury. The words charged were evidently spoken in heat,
and not calculated to injure the plaintiff. He has, in fact,
shown no damage resulting from the words spoken. The
charge of the judge *a quo*, was too broad in telling the jury
that if the words spoken charged the plaintiff with moral
turpitude, in such a way as in their opinion was calculated
to injure him, they should find for him without showing
any special damage. The judgment should, therefore, be
reversed.

*Bullard, J.* The members of the court do not appear to
differ materially upon any part of this case, except as to the
propriety of the last part of the charge given to the jury, to
wit : " that the words are to be understood in their common

The courts in Louisiana, are not bound by the technical and artificial rules of the common law of slander, but where our law is silent, we may resort to a foreign system for a rule consonant to reason and equity. But the court is not prepared to adopt the common law distinction, between words actionable in themselves and words which are not so; and to say a plaintiff is not entitled to recover in an action of slander, unless charged with an indictable offence, without proof of special damages.

popular meaning, and if they charged the plaintiff falsely and maliciously with moral turpitude, so as to injure his character and standing in society, they might find for the plaintiff, without showing any special damage."

If this part of the charge were to be tested by the common law, it is probable it would be found inaccurate and loose. None of us suppose that we are bound by the technical and artificial rules of the common law of slander, but when our law is silent, it is supposed that we may resort to a foreign system for a rule, if that rule be consonant to reason and equity. I am by no means prepared to adopt from the common law the distinction between words which are actionable in themselves, and words which are not; and to say that a plaintiff is not entitled to recover in an action of slander, unless charged with an indictable offence without proof of special damages. In the present case, the latter part of the judge's charge was perhaps uncalled for, because the words alleged to have been uttered, might well be found by the jury to amount in a popular sense to a charge of perjury, an indictable offence, and, consequently, it was not important to inquire what would be the law of the case if the charge had only amounted to one of moral turpitude. And yet it may be said that, under the charge of the court, the jury might go beyond the inquiry, whether the words in a popular sense imported a charge of an indictable offence, and say that they at least imputed great moral turpitude, for it cannot be doubted but that it is highly immoral to swear falsely, even in an affidavit, not connected with any judicial proceedings. I am disposed, therefore, to look at the charge in that point of view, and while we all agree that the judge acted correctly in refusing to charge in the main as prayed by the defendant's counsel, my opinion is, that he did not err in charging as above stated. I concur with the judge of the District Court in his view of the law. I should, however, be disposed to reconsider my opinion, if upon inquiry I should be satisfied that this court in its previous decisions, had sanctioned a contrary doctrine. But it does not appear to me to have done so, either expressly, on a point directly before it, or by necessary impli-

cation. The case of Wamack *vs.* Kemp, is perhaps the strongest; but it does not appear to me, that the point now under consideration was made or decided expressly. In that of Stewart *vs.* Carlin, the court held, that when the charge was of perjury, the plaintiff might recover without showing special damages, but the court did not say that there might not be cases in which the plaintiff could recover, when the accusation conveyed only a charge of moral turpitude, injurious to his reputation and standing in society.

I am of opinion, therefore, that the judgment first pronounced, remain undisturbed.

I concur fully in opinion with judge Bullard, for the same reasons by him adduced, and conclude that the judgment first rendered, ought to remain undisturbed.

<div style="text-align:right">EDWARD SIMON.</div>

I concur also in opinion with judge Bullard, and think that the former judgment of this court ought to remain undisturbed.

<div style="text-align:right">A. MORPHY.</div>

*Garland J.* Agreeing fully with the majority of the court in the opinion that the judgment heretofore given should remain undisturbed, I shall in giving my reasons, briefly review the previous decisions of the court, and, I think, can show the opinion of the majority does not impugn or overrule any of them.

After the adoption of the *Louisiana Code*, and the repeal by the legislature of the ancient laws, there were not a few lawyers who doubted whether in such actions as slander, and some others sounding in damages, it was not necessary to prove the damages before a party could recover, but the better and more general opinion now prevails, that under the *articles* 2294, 2295 and 1928, they can be maintained. If that is correct, and the action of this court, the general assent of legal men, and my own convictions induce me to believe it

<div style="margin-left:60%">WESTERN DIST.

*October*, 1840.

MILLER
*vs.*
HOLSTEIN.

*Garland J.*
Actions of slander maybe maintained, without proving damages and the party may recover.</div>

WESTERN DIST.
October, 1840.

MILLER
vs.
HOLSTEIN.

Every act of
man which
causes damage
to another, cre-
ates responsibi-
lity, and when
that responsi-
bility is not de-
fined, we must
proceed under
article 21 of the
Louisiana Code,
and resort to
natural law, rea-
son and usage.

is, we have a law broad enough to cover every case. "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it." There is no arbitrary standard prescribed. Every act that causes damage, creates responsibility, and where the extent of that responsibility is not defined, or the law is silent, we must proceed under the 21st article of the Code, and decide according to natural law and reason, or received usage. To a technical lawyer, this may seem very indefinite, but as it is impossible to provide for every case which fraud or malice may devise, we are obliged to authorize a discretion in the judicial tribunals, that will apply a remedy for every wrong. In actions of slander, I am disposed to leave much to the integrity and discretion of juries. They form a portion of the community of which the offender and the injured party make a part, and can in general best judge what is necessary to preserve its purity and vindicate the characters of its members. Whenever any abuse of the discretion occurs, the court or the legislature will apply a corrective.

In actions of slander, I am not an advocate for establishing any particular standard by which words are to be judged as being actionable or not actionable. I am willing to leave every case to be decided on its merits and peculiar circumstances, under the broad principles laid down in the Code, which are very similar to the laws in force previous to its adoption. Partidas 3, tit. 2, l. 31. But, if any such standard is to be adopted, I object most strongly to that established by the common law, that no words are actionable, and subject a party to damages without special proof, but such as impute an indictable offence, or injure a man in his profession. I believe an action of slander can be, and ought sometimes to be maintained, for words which do not charge an offence that will subject the party to indictment. For instance, to charge a virtuous woman with a want of chastity. On the other hand, there are words which impute indictable offences that would not, in my estimation sustain an action for slander: As to say of a man, he was guilty of an assault

and battery, or that he was the bearer of a challenge to fight a duel, or that he retailed spiritous liquors without a license.

The few cases of slander that have come before this court, cannot have established any particular system of jurisprudence or standard, as to words that are actionable in themselves or not, and if any is to be established, I prefer it should be effected by a series of decisions, than by laying down a general rule. The rule of the common law is in some respects absurd, in others positively unjust, and was established for the double purpose of repressing frivolous actions, and saving the judges the trouble of trying cases.

The case of Moore *vs.* Stokes, 6 *Martin, N. S.,* 538, as I understand it, decides nothing more than when the question is, to what weight testimony is entitled, the Supreme Court will respect the conclusions of the jury.

In the case of Stackpole *vs.* Hennen, 6 *Idem.,* 481, the question was, whether the action could be maintained against the defendant, because he was a lawyer, and used the words in defending his client.

The case of Wamack *vs.* Kemp, 6 *Idem.,* 477, I do not understand as recognizing any such rule as is contended for by the counsel for the defendant in this suit. From reading the statement of the case, a conclusion of that kind might be supposed, but the opinion of the court does not to my mind sustain it. The action was one for slander and false imprisonment: the count for slander was dismissed, because "the charge of perjury was made in a legal proceeding, with a view to bring the plaintiff to justice." (The report says defendant, but plaintiff was evidently intended;) and nothing showed malice in the defendant. The action of false imprisonment was dismissed, because the "plaintiff suffered in consequence of the ignorance of the magistrate, who ought neither to have arrested or confined him." I do not understand that the question was raised in that case, whether a charge of perjury committed in a voluntary affidavit, would sustain an action for slander. The court says, "it is true the plaintiff did take the oath by which he was charged with perjury, in a voluntary affidavit, neither taken or intended to

WESTERN DIST.
October, 1840.

MILLER
*vs.*
HOLSTEIN.

be used in a legal proceeding," but nothing is said as to the consequences. The reporter does not appear to have considered it a point made in the case, if we judge from his marginal note. He only says, "no action will lie for a charge of perjury made in the course of judicial proceedings." I have read this case with much care, and cannot find any evidence in support of the allegation, that the defendant used the words on any occasion, except in his affidavit. If there had been proof of his using them at other times and places, I suspect the decision of the court would have sustained the verdict of the jury.

The case of Stewart *vs.* Carlin, 2 *Louisiana Reports*, 73, does not, in my opinion, recognize the doctrine of words actionable in themselves or not. The point was not made or argued. The counsel for the defendant in that case, denied there was any such action as one for slander, since the repeal of the ancient laws, and the argument and decision of the court was upon that question. If there is any thing else in that case, it is a *dictum* upon points not made.

In the case of Trimble *vs.* Moore, 2 *Idem.*, 577, the principal point was, whether the words had been substantially proved. The other point I remember was discussed in the course of the argument, but not decided. The doctrine laid down in that case, as far as it goes, is correct, and supports the charge of the district judge in the present.

This court in the case of Cauchoix *vs.* Dupuy et al., 3 *Idem.*, 206, held, that damages could be recovered for saying the plaintiff was a man of color. These words charged no indictable offence or moral turpitude. The effect was, to exclude the plaintiff from association with a certain portion of the community, and if true, to deprive him of the rights and privileges of a white man, under our constitution and laws.

In concurring with the majority of the court, I repeat my conviction, that no decision heretofore solemnly made, has been impeached or overruled. We are only carrying out to their legitimate results, the doctrines laid down in the cases of Trimble *vs.* Moore and Cauchoix *vs.* Dupuy et al., and

extending to every citizen, the protection which our Code <span>Western Dist.</span> affords against malicious slanderers and public defamers of <span>October, 1840.</span> reputation.

*Martin J.*, dissenting.

This is an action of slander, and the words charged are, that he (plaintiff) "was a rascal, and had sworn falsely, and that he (defendant) had the documents to show for it." There was a verdict and judgment for the plaintiff, and the defendant appealed.

If the case was before this court on the merits, I should have no objection to the affirmance of the judgment. But the attention of the court has been called to a bill of exceptions taken to the refusal of the judge to charge the jury as he was requested to do by the defendant's counsel, and also, to the charge which he gave. I am of opinion that the first part of the charge given, as far as the judge ought to have gone, is substantially that which was called for, and that the alteration he made in the form is correct.

The first part of the charge is in the following words : " If you consider the words spoken, in a popular sense, conveyed the idea that he committed a legal crime, you will find for the plaintiff such indemnity as, in your sound discretion, ought to be given according to the injury done to the plaintiff in his feelings or calling."

This part of the charge appears to me in perfect conformity with the principles established by the decisions of this court.

In the case of Stewart *vs.* Carlin, 2 *Louisiana Reports*, 73, the court took the position that in actions of slander there are words for which damages will be given, although none were proved to have resulted from them ; *id est*, words actionable in themselves, from which it follows, as a corollary, that there are others for which no damages will be given, unless some are proved to have resulted from them ; *id est*, words not actionable in themselves. The court in that case said, " in actions of slander the court or jury must, in *many*

<span>*Martin J. dissenting.* In actions of slander, there are words which are actionable in themselves, and damages will be given, although none are proved; but there are others not actionable, and no damages will be given unless some are proved.</span>

Western Dist.
October, 1840.
─────────
MILLER
vs.
HOLSTEIN.

*cases,* allow damages when no special damage is shown." This strongly implies that there are cases in which damages are not to be given unless they are specially proved. In the same case, we held that words charging the plaintiff with perjury, were of the first class.

In the case of Moore *vs.* Stokes, 6 *Martin, N. S.,* 538, the same principle was recognized; "the defendant having charged the plaintiff with having sworn to *a lie,* in open court, in a suit in which the then defendant was plaintiff."

In the case also of Stackpole *vs.* Hennen, 6 *Idem, N. S.,* 481, the charge was, that the defendant being of counsel in a suit in which the plaintiff was a witness, said that the latter had perjured himself, and had come into court with the intention of doing so. The plaintiff had a judgment which was reversed on appeal, and judgment of nonsuit entered, on the ground that counsel are not responsible for statements made by them if they are pertinent to the cause, and the counsel is instructed by his client to make them.

In several other cases this court has held that a charge of perjury supports an action of slander.

In the case of Trimble *vs.* Moore, 2 *Louisiana Reports,* 577, the defendant having charged the plaintiff "with having stolen three hundred dollars in money and notes, and having run away;" and the proof being that he "had *taken* from defendant's store to the amount of two or three hundred dollars in money and notes, and had run away with them," the court held that the charge was supported and entitled the plaintiff to his action.

Swearing falsely in one of those voluntary affidavits, which religion forbids, and the law discourages and disregards, was considered by this court in the case of Wamack *vs.* Kemp, 6 *Martin, N. S.,* 477, as an offence, the charge of which did not support an action of slander, unless damages were proved. The accusation there was, "that the defendant charged the plaintiff in an affidavit with the crime of perjury, and at different times and places told, in the hearing of many persons, that the plaintiff had been guilty of perjury;" there was a verdict and judgment for the plaintiff, and on appeal

WESTERN DIST.
*October,* 1840.

MILLER
*vs.*
HOLSTEIN.

this court reversed the judgment and gave one for the defendant.

In this case the petition contained two distinct counts: One of them on a *written* charge of perjury in an affidavit, and the other *oral,* charging the same crime in the hearing of several persons. This court was of opinion that the first charge having been made in a legal proceeding, with a view of bringing the plaintiff to justice, was not actionable. As to the *oral* charge the evidence disclosed that the swearing was not in a legal proceeding, but in a voluntary affidavit. The case was this: The plaintiff for some unknown cause made oath before a magistrate, "that he had never invaded the marital rights of the defendant." This court expressed the opinion that the plaintiff having taken the oath in a voluntary affidavit, neither taken or intended to be used in a legal proceeding, the judgment against him must be set aside.

These cases fully support the part of the judge's charge under consideration. He added "that he was not prepared to say that mere words of heat, such as that another is a rascal, ought to occasion damages," "unless he shows he was injured by being deprived of his employment." The defendant's counsel has complained of this portion of the charge. He has urged that the words are not actionable at all; even, with proof of special damage. That they are words of heat and passion; the privilege of the vulgar; having no determinate meaning, calculated only to manifest the ill humor of him who utters them, without fixing any positive stigma on the person to whom they are applied. The counsel has adduced, to maintain his position, numerous authorities from the decisions of the courts of the other states of the Union, and of England. As special damages are not alleged in the petition, the defendant cannot be injured by the opinion expressed in the charge of the judge *a quo,* because it is favorable to him. I, therefore, think that this court is not called on, in the decision of this case, to say whether, in our jurisprudence, there are words not actionable even when damages are shown.

The second part of the judge's charge ought not, in my opinion, to receive the sanction of this court. It is as follows: " If the language used, charged the plaintiff with *moral turpitude,* falsely and maliciously, in such a way as in their opinion to *injure* his character and standing in society, they may find for the plaintiff, *without showing special damages.*"

This part of the charge appears to me absolutely useless, and inconsistent with what the judge had said before. He had expressed his opinion upon all the charges in the petition ; *that* of forswearing, and that of calling the plaintiff a rascal. There was nothing before the court to which this last part of the charge is applicable.

He had said that a charge of false swearing was not actionable without damage being shown, unless the false swearing constituted *a legal crime ; id est,* perjury, or a false oath taken in a judicial proceeding, knowingly, in a matter material to the issue. This was negativing the idea that the moral offence of false swearing, in a voluntary affidavit, not taken or intended to be used in a legal proceeding, was one, the malicious charge of which was actionable. Such a moral offence certainly constituted moral turpitude.

The charge appears to be too vague and loose ; the words moral turpitude, too general : *Pothier* says, " that giving of alms is a real obligation, and the neglect of it is a high offence." Further, " that he who has received a signal benefit is obliged to render his benefactor all his services, in his power, when occasion offers for his doing so, and it is sinful and dishonorable to neglect it." (*Obligations No.* 1.)

Thus, moral turpitude is the breach of the duties of charity and gratitude, and our learned brother of the District Court certainly did not mean to say, as his charge implies, that words charging a man with want of gratitude were actionable, without any damage being shown.

The article of the Decalogue says, " swear not at all." It has been generally and almost universally believed that the prohibition does not extend to oaths required or authorized by law ; the taking any other is a disregard of God's command, even, when the matter sworn to is true, and an

act of moral turpitude. Yet this court, those of all the other states in the Union, and those in England, hold, that a charge of having taken a false oath, in a case in which the law neither requires or authorizes an oath to be taken, is not such an act of turpitude that the charge of it is actionable in itself.

It is meet that while we administer justice to the parties who litigate their rights in this court, the rest of the community may, as much as possible find in our judgments a fixed and certain rule on which they may rest assured that, in future, similar cases will be decided.

My humble efforts have been united with those of my former colleagues, and we have concurred with great unanimity in a number of decisions which form an almost complete system of jurisprudence in regard to the action of slander. In most of these cases I had the honor of being the organ of the court. I am not dissatisfied with the decisions given in any of them, and I regret. that a portion of the charge of the judge *a quo*, in the present case, is about to overthrow the established system, and leave the people of the state without any rule or guide in the action of slander; and the opinion of the jury, unaided and uncontrolled by the courts, is to be the sole criterion and standard of their rights.

I conclude, that we ought to reverse the judgment of the court, set the verdict aside, and direct the case to be remanded, with directions to the judge *a quo*, to abstain from instructing the jury " that if the words charged the plaintiff falsely and maliciously with moral turpitude, so as to injure his character and standing in society, they might find for the plaintiff, without showing any special damages ;" and that the plaintiff and appellee pay the costs of this appeal.

*The judgment should be reversed, and the case remanded, with directions to the judge, not to instruct the jury, that "charging the plaintiff falsely and maliciously, with moral turpitude, so as to injure his character and standing in society, they should find damages for him, without any special damage being proved."*

But the majority of the court being of a different opinion, it is, nevertheless, ordered and decreed, that the former judgment of this court, remain undisturbed.