Garland, J.
The plaintiff alleges, that he is a purser in the navy of the United States, and that, in that capacity and as an individual, he had deposited large sums of money with the defendants ; and that the payment of his checks was refused when presented, although he had a sufficiency of funds in the bank to pay them, in consequence whereof they were improperly protes *460 ted, and. he obliged, at great cost and with damages, to take them up. He claims the sum of $1663 85, as a balance lying in the bank which is improperly withheld, with interest; the sum of §38 77, paid for costs of protests and damages; and the sum of §5000, for damages arising from a slanderousand libellous charge made through the cashier and other officers of the bank, that he (petitioner) “ had frequently overdrawn his account as purser with said bank.” He avers, that these slanders were circulated verbally and in writing with an “ ill intent,” and for the purpose of injuring him in his private and professional Capacity ; wherefore he claims the sums above stated, with interest and costs.
The defendants, after a general denial, state that it is true, the plaintiff did open an account as a depositor, and deposit various sums of money as purser, and that the Bank, during the period said account was kept, always paid the plaintiff ?s checks punctually ; but that finally the plaintiff overdrew his account as purser, which over-drafts have since been covered and made good by new deposits. It is further stated, that in consequence Of such recent deposits there is a credit of §303 98 in favor of plaintiff, which is ready to be paid to him. The respondents further deny that with “an ill intent” any slanderous or libellous Charges were ever made.
It is apparent from the testimony, and is not denied, that the plaintiff, as purser, deposited at different times in the Bank, the sum of $11,509; and he admits that he drew checks to the amount of $9845 15, which were paid. The defendants produce checks which were paid to the amount of $11,205 02, and from this discrepancy the difficulty arises. Four of the checks produced and paid, amounting to §1359 87, the plaintiff asserts are forgeries. The defendants contend that they are genuine, and upon this question the whole case turns. It is proved, that the plaintiff held the station in the navy which he states in his petition. His station was at the navy yard near Pensacola. Soon after his arrival there, and without its being shown that he was personally acquainted with a single director or officer of the Commercial Bank, he made a deposit of $9859, and commenced •checking on it; using the checks principally to pay the officers arid persons connected with the navy yard, and in the public *461 Service, but sometimes giving them to other persons. These checks, it is shown, circulated freely at and in the neighborhood of Pensacola, at a premium ranging from eight to fifteen per cent. The plaintiff, in addition to the duties of his public station, had a mercantile establishment near the navy yard, commonly called the “ Purser’s Store,” and to facilitate his operations and promote the convenience of the people of the vicinage, had issued a number of small notes or bills, which circulated as currency at the time. The business was carried on without difficulty for a considerable time, and the plaintiff’s checks were regularly paid until about the 3d of July, 1838, when the cashier of the Bank wrote to the plaintiff and informed him, that his account as purser was overdrawn to a small amount, and that numerous checks were almost daily presented and payment refused. The particular attention of plaintiff was called to this matter; and after some correspondence, and a call on his part for a list of checks, with dates, numbers, names of payees, and amount of checks, &c., the plaintiff informed the defendants that four checks, amounting to the before mentioned sum, were forged, tie had previously asserted the correctness of his account, and also made other deposits to meet outstanding checks and cover the reported deficiency, which it is shown was inconvenient; and the return of a number of checks, some protested and others not, caused serious inconvenience and annoyance, some expense for protests, and the payment of damages occasionally, and injury to the plaintiff’s credit and standing as a business man. The small notes or bills in circulation, suddenly and rapidly came back on the plaintiff, and were taken up by him in August or September, at considerable inconvenience.
The evidence in relation to the four checks alleged to be forged, we have carefully examined. It is contradictory in its character, but we have had the benefit of an inspection of the checks alleged to be false, and have compared them with those admitted to be genuine, and, after weighing all the testimony, we concur in opinion with the Judge and jury below, that these checks are r.ot genuine; yet they are so well executed, as easily to deceive a close and accurate observer; and we see nothing to justify a belief, that the officers of the Bank were not in good faith when *462 they paid them. The testimony is voluminous and minute, and cannot be much condensed; but we have no doubt, after weighing it, as to the correctness of our inferences from, and conclusions upon it. The checks are not printed forms such as are generally used, but are all written; and the four in controversy purport to be all in the hand-writing of the plaintiff, which has enabled us to make a more accurate comparison, and to discover differences in the writing, which would have been difficult, if only a few words had been written. Besides the differences that are perceptible upon a close examination of the writing, another fact is conclusive. Tt is proved that the plaintiff kept a check book, and all the genuine checks are written on paper taken from it and are alike, while the forged checks are written on paper of a different quality. This fact is proved by a paper dealer and manufacturer, who describes the difference in the quality of the paper; yet -the imitation of the plaintiff’s writing and signature is so close, that several bank tellers and clerks testified that they would have paid the checks, unless there had been some circumstance to cause unusual caution and particular investigation.
The evidence as to costs and damages is quite indefinite ; and although it is proved that something was paid, no specific amount is established.
In support of the claim for damages, in addition to what has been stated, it is shown that the cashier wrote to the plaintiff that his account was overdrawn : and he swore on the trial that he believed it was at the time, and, taking the four checks disputed into account, the statement was true. To a person who presented a check drawn by the plaintiff, the cashier, or some other officer, after refusing to pay it, said that the plaintiff had overdrawn his account, and did so frequently. This was reported to the plaintiff, who was much mortified thereby, and annoyed by his checks not being paid; and the circumstance caused much speculation and remark among the officers and other persons at the navy yard, and in Pensacola.
After a long investigation, the jury gave a verdict for the whole amount claimed in the petition. The Judge refused to grant a new trial; and from the judgment given against the Bank, this appeal has been prosecuted.
*463 In this court the case has been argued at great length, and many points presented which we do not think it necessary to decide.
As to the sum of $1663 85, we have no doubt of the right of the plaintiff to recover it. The officers of the Bank were imposed on, and paid four checks which the evidence satisfies us were not drawn by the plaintiff. The Bank must, according to the well established decisions of this court, and the principles which govern the contract of deposit of money to be drawn upon checks or orders, bear the loss. The depositary must take care that he pays none but the checks or drafts of the depositor. See Laborde v. The Consolidated Association of Louisiana, 4 Robinson, 190.
There is not, in our opinion, sufficient evidence to support the claim of $38 77, for costs of protests and damages paid on the returned checks. The plaintiff paid something, but what sum is not definitely proved; and his counsel, during the argument, in effect admitted the insufficiency of the evidence, and said he was willing to enter a remission for the amount, if the judgment should, in other respects, be confirmed.
The claim for damages is based, as the counsel informs us, upon article 2294 of the Civil Code, and the decision of this court in 16 La. 395. It is in effect a demand to make a corporation liable in damages, for a slander alleged to have been uttered and propagated by one or more of its officers or agents, against a person doing business with the institution. This is, in our opinion, pushing to a rather unreasonable extent the principle, that every act of man that causes damage to another, obliges him by whose fault it happens, to repair it. To support the position assumed, the counsel have quoted the decisions of this court in 5 La. 67, 463, and 1 Robinson, 178, in which it was held that corporations are responsible for the acts of their agents; and to that, as a general principle, we now adhere ; but it does not prove that they are responsible for every act of the persons in their employ, and a standing security for all they may say or do. This court, in the cases cited, and others that might be, if necessary, have gone quite as far as any other tribunal, in holding corporations to a just responsibility both for their own acts and those *464 of their agents ; but we think we are now requested to go a step beyond any decision heretofore given. The cases cited from 4 Serg. & Rawle, 17, 19; 19 Pickering, 515; 4 Ohio Rep. 513 ; 1 Wilcox’ Ohio Rep. 160, and 2 Harrington, all rest upon the same principles as those assumed by this court in 5 La. and 1 Robinson. In 15 La. 169, 17 Mass. Rep. 500, and 1 Hill’s Rep. 578, will be found cases in which corporations have been exempted from liability for the acts of their agents or employes. The trué rule seems to be, that when the agent acting in the capacity bestowed upon him by the corporation, and in discharge of some duty or employment directed by the employer or incidental to his situation, does an act that causes damage to an individual, the body corporate is responsible; but where the agent does any act of his own free will, without reference to his functions as a corporate agent, then the corporation is not responsible. For example, if a person should go into a banking house or an insurance office, and there get into a difficulty, or dispute in relation to business of the corporation, with an agent or officer, and an assault and battery should ensue, we suppose it would not be seriously contended that the bank or office was answerable in damages, unless there was some express recognition of the act. Articles 430, 431, 433, 434 of the Code, prove this position to be correct. We suppose a bank could not maintain an action for damages against an individual, if he were to say that it was insolvent, or had issued more notes than it was authorized by its charter. If this be so, it would be unjust to make it responsible for an unauthorized accusation made by one of its officers against another person.
But the strongest objection to a recovery in this case, is the entire absence of any malicious or evil intent, on the part of the officer of the Bank alleged to have uttered the slander charged. It is not distinctly shown, whether it was the cashier or some other officer, who told Gosling that the plaintiff had over-drawn his account; but it is shown, that he (plaintiff) was an entire stranger to the persons managing the business of the Bank, that he sent the amounts deposited from Pensacola, and was never in the banking-house until long after the difficulties complained of occurred. We cannot discover any motive on the part of the Bank or *465 its officers to injure the plaintiff. His checks were paid, as long as there was money to pay them j and when it was gone, there was no alternative but to say so. The Bank was imposed on by a fraud, which the plaintiff himself says, was perpetrated by a person in his own employment; and it would appear to be very nearly as just to make him responsible for his unauthorized acts, as to make the Bank answer for the unauthorized acts of its officer. After the most deliberate reflection, we are of opinion, that the plaintiff has no cause of action or right to recover damages from the defendants.
The view we have taken of the case, makes it unnecessary to decide upon any of the bills of exceptions taken by the parties, as we have based our judgment as to the four checks being forged, upon testimony not objected toby either.
It is, therefore, ordered and decreed, that the judgment of the Parish Court be annulled and reversed \ and that the plaintiff do recover of the Commercial Bank of New Orleans, the sum of one thousand six hundred and sixty-three dollars and eighty-five cents, with interest thereon, at the rate of five per center annum from judicial demand until paid, with costs in the court below ; those of the appeal, to be paid by the plaintiff.